UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                              Case No. 8:18-bk-01970-RCT
                                                    Chapter 7
John Allan Wolding,


 Debtor(s).
_____/

## CHAPTER 7 TRUSTEE'S APPLICATION TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND SNAP REALTY TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. §§327, 328 & 330

Christine Herendeen, as Chapter 7 Trustee (the "Trustee") for the above referenced

Debtor(s) (together, the "Debtor"), files this Application to authorize retention of (1) BK

Global Real Estate Services ("BKRES") and (2) Snap Realty (the "Listing Agent")  In support

thereof, the Trustee respectfully states as follows:

### PRELIMINARY STATEMENT

The Trustee requests approval to retain BKRES and Hunt Realty Group, at no cost to

the estate, to negotiate with and persuade the first lien holder on certain real property in which

the estate has no equity to (1) allow Trustee to sell such property at the highest price that the

market will bear, (2) waive the resulting deficiency claim and (3) pay a 11 U.S.C. § 506

surcharge to provide a carve out for the benefit of the estate and pay all other sale expenses,

including a 6% brokerage commission that will be shared equally by BKRES and Listing

Agent only upon the closing of a sale that is approved by this Court.

BKRES and its affiliates have proprietary technology and a national team of

experienced loan servicing specialists, asset managers, negotiators, trustee relation managers,

real estate brokers and agents, closing specialists and attorneys with extensive experience in

procuring the consent of mortgage lenders and servicers to sell over-encumbered properties and provide significant cash recoveries to selling estates with no equity, through the Consented Sale™ process described herein.

BKRES and Listing Agent will not be entitled to any compensation from the estate whatsoever under any circumstances. They will only receive and share a customary brokerage commission that is paid by secured creditor as a 11 U.S.C. § 506 surcharge approved by this Court.

The Trustee (1) believes that hiring BKRES and Listing Agent to pursue a Consented Sale™ will likely result in secured creditor paying a carve out for the benefit of the estate with proceeds from the public sale of an asset in which the estate has no equity and (2) expects to obtain secured Creditors' agreement to a Consented Sale™, and bring a separate motion seeking this Court's approval of the procedures, terms and conditions by which the over-encumbered property will be sold, within the coming months.

## Jurisdiction

1.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).

2.       Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

## Background

3.      On 03/14/2018, the Debtors commenced this case by filing a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.

4.      Thereafter, the Trustee was appointed as the Chapter 7 Trustee in this case.

5.    The Trustee held and concluded the 341 meeting on 04/18/2018.

6.    The Debtor is the sole owner of real property located at 17954 Branch Rd, Hudson, FL 34667 (the "Property").

7.    The Debtor scheduled the Property with a value of $148,775.00 ".  The Property is subject to mortgage liens (the "Senior Mortgage") in favor of Nationstar Mortgage A/K/A Mr. Cooper (collectively, the "Secured Creditors") in an amount exceeding $263,762.00, and a junior lien lien in favor of Flagstar in an amount exceeding $80,000.00

8.    The Trustee, after reviewing certain materials, including (without limitation) the BK Score™[1], sales analysis report and opinion of value for the Property provided by BKRES and Listing Agent, has determined it to be in the best interest of the Debtor's estate and all creditors to negotiate to obtain Secured Creditors' agreement and consent ("Consent") to do the following, with the proviso that the hired professionals, BKRES or Local Agent, shall not participate in the sale and purchase of any estate property except as hired brokers:

a.    sell the Property to whichever third party Trustee determines to have made the best qualified offer during a public sale approved by the Court;

b.    release the Senior Mortgage and otherwise waive all of its claims against the estate with respect to the Property (including any deficiency claims resulting from the proposed sale); and

---

[1] The BK Score™ is a 100-point rating that is generated by a proprietary algorithm from 10 unique property attributes in order to consistently measure sales confidence and predict market value.

c.   If the Property is sold to a third party, agree to a 11 U.S.C. § 506 surcharge to pay all the expenses associated with the proposed sale, including the payment of a 6% real estate brokerage commission to BKRES and Listing Agent and reimbursement of their out-of-pocket expenses, and provide a carveout for the benefit of allowed unsecured creditors of the Debtor's estate;

d.   If Secured Creditor purchases property, agree to a 11 U.S.C. § 506 surcharge to pay all the expenses associated with the proposed sale, including the payment of a 2% real estate brokerage commission to BKRES, of which a $500.00 fee will be paid to Listing Agent, and provide a carveout for the benefit of allowed unsecured creditors of the Debtor's estate.

9.   Trustee expects to obtain Secured Creditors' Consent and bring a separate motion seeking an order approving the sale of the Property (the "<u>Motion to Approve Sale</u>") within several months of the entry of the order sought by this Application.

10.   By this Application, the Trustee requests authority pursuant to Sections 327, 328(a) and 330 of the Bankruptcy Code to (a) retain BKRES and Listing Agent to procure Secured Creditors' Consent, and (b) approve Secured Creditors' payment of the fees described below directly to BKRES and Listing Agent at closing of the sale of the Property, if and when the Consent and Motion to Approve Sale are granted.

**<u>APPLICATION</u>**

11.     Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327...on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage or fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).  Section 330 of the Bankruptcy Code permits the Court to "award to a trustee… or a professional person employed under section 327…(A) reasonable compensation for actual, necessary services rendered [by such party]… and (B) reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1). Compensation will be determined later in accordance with 11 U.S.C. § 330.

12.     As further described in the materials attached to their affidavits, BKRES[2] and Listing Agent have extensive experience obtaining the consent and agreement of mortgage lenders and servicers to the sale of their collateral and resolution of any resulting unsecured claims in order to produce a recovery for estates from over-encumbered assets in which the estate has no equity.

13.     The Trustee believes that the highest and best value for the Property will be generated through a sale in which the Property is widely marketed to the public and offered at the highest price that the market will bear.  The Trustee further believes that such a sale is in the best interest of the Debtor's estate, but can only be achieved if Secured Creditors' Consent is first obtained.  That is why the Trustee believes that retaining BKRES and Listing Agent to obtain Secured Creditors' Consent is in the best interests of the Debtor's estate.

---

[2] BKRES is the broker affiliate of BK Global (http://www.bkginc.com/).

14.   In no event will the estate have any obligation to pay BKRES or Listing Agent. The terms of the BKRES Agreement and Listing Agreement provide that BKRES and Listing Agent are only entitled to payment if and when (a) Secured Creditor grants its Consent, (b) the Motion to Approve Sale is granted and (c) the Property is sold, in which event BKRES and Listing Agent will receive and share a 6% real estate brokerage commission at closing in accordance with the order approving the sale.

15.   BKRES and Listing Agent will not be entitled to any fees if Secured Creditor does not grant its Consent or the Court does not grant the Motion to Approve Sale.

16.   The Trustee submits that the terms of employment and compensation as set out in the BKRES Agreement and listing agreement are reasonable in light of the extensive experience of BKRES and Listing Agent and the nature of the services they provide.

17.   BKRES attested that it is a disinterested person within the meaning of Section 101(14) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016(a).   Attached hereto as **Exhibit "A"** is an Affidavit of Disinterestedness of BKRES. BKRES also attests, pursuant to Bankruptcy Rule 2016, that it shall not split or share its fee with any individual or entity other than Listing Agent.

18.  Listing Agent attested that it is a disinterested person within the meaning of Section 101(14) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016(a).  Attached hereto as **Exhibit "B"** is an Affidavit of Disinterestedness of Listing Agent including a Bankruptcy Broker Addendum and the Listing Agreement.  Listing Agent also attests, pursuant to Bankruptcy Rule 2016, that it shall not split or share its fee with any individual or entity other than BKRES.

## CONCLUSION

For the foregoing and all other necessary and proper purposes, the Trustee seeks the Court's authority to retain BKRES and Listing Agent in this case, and requests that the Court approve the compensation arrangements set forth in the BKRES Agreement and Listing Agreement pursuant to Sections 327, 328(a) and 330 of the Bankruptcy Code.

Dated:  May 23, 2018              Respectfully submitted,

/s/Christine Herendeen
Chapter 7 Trustee
P.O. Box 152348
Tampa, FL 33684
Telephone: (813) 438-3833
Email:
clherendeen@herendeenlaw.com

## **CERTIFICATE OF SERVICE**

I certify that On May 23, 2018 a true and correct copy of the Application to Retain BK

Global Real Estate Services and Snap Realty Real Estate Broker was provided by electronic

delivery or U.S. mail to:

U. S. Trustee, 501 E. Polk Street Suite 1200, Tampa, FL 33602

Christie D. Arkovich, Law Offices of Christie D. Arkovich, 1520 West Cleveland St., Tampa, FL 33606

John Allan Wolding , 17954 Branch Road, Hudson, FL 34667

/s/ Christine L. Herendeen_____
Christine L. Herendeen

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

In re:                                          :        Chapter 7
                                                :
                                                :        Case No. 18-01970
                                                :
Debtor.                                         :
**John Wolding,**                               :
                                                :

## DECLARATION OF PATRICK BUTLER IN SUPPORT OF APPLICATION TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND SNAP REALTY TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. § 327, 328 AND 330

The undersigned, Patrick Butler ("Declarant") hereby states:

1.      I am employed by BK Global Real Estate Services ("Applicant" or "BKRES"),

which is an entity duly licensed as a real estate brokerage by the State of Florida located at 1095

Broken Sound Pkwy. NW, Suite 100, Boca Raton, FL 33487.  I am Applicant's broker-in-charge

and am authorized by Applicant to submit this Declaration on Applicant's behalf in support of

the annexed Application to Retain BKRES and in accordance with Bankruptcy Rule 2014.

2.      Based upon the information discussed below, I believe that Applicant is a

disinterested person and does not hold or represent any interest adverse to the interest of the

Debtor's estate as that term is defined in Section 101(14) of the Bankruptcy Code.

3.      To the best of my knowledge:  (a) neither BKRES nor any of its employees has

any connection with the Debtors, its creditors in this case, the Chapter 7 Trustee, the Office of

the United States Trustee, or any employees thereof or any party in interest herein; (b) BKRES

and each of its employees are "disinterested persons," as that term is defined in Section 101(14)

EXHIBIT A

of the Bankruptcy Code; and (c) neither BKRES nor any of its employees hold or represent an interest adverse to the Debtor's estate.

4.     A description of the qualifications of, and services provided by, BKRES is attached as Schedule 1.

5.     That I have read the application of the Trustee regarding the retention and compensation of BKRES and agreed to be bound by the terms and conditions represented therein.

6.     That I further understand that the Court, in its discretion, may alter the terms and conditions of employment and compensation, as fully set forth in the BKRES Agreement that is attached as Schedule 2 hereto, as it deems appropriate.


Verified under penalty of perjury that the foregoing is true and correct this ___ day of May, 2018.

Patrick Butler
Corporate Broker


The foregoing instrument was acknowledged before me this ___ day of May, 2018, by Patrick Butler who provided identification or is personally known to me and who aid take an oath.

Notary Public-State of Florida


My Commission Expires



Notary Public State of Florida
Lyda Castro
My Commission FF 905572
Expires 08/03/2019

# SCHEDULE 1

## STATEMENT OF QUALIFICATIONS AND SERVICES OF BKRES

BK Global™

BK Global™ is a national company with a bankruptcy service platform containing a network of certified BK real estate Brokers and Agents, a national marketplace for listing and submitting bankruptcy real estate purchase offers (www.bankruptcylistings.com), and a centralized team of loan servicing specialist that enable Federal Trustees to streamline and manage their real estate needs most effectively for the benefit of the bankruptcy estate and unsecured creditors. By integrating its unique services and implementing its proprietary tools, BK Global is poised to create industry standards and efficiencies.

Consented Sale™

A Consented Sale™ is an "enhanced" agreement between all requisite stakeholders, the most important being the lender/servicer, of a residential or commercial property for less than what the owner still owes on the mortgage. A Consented Sale™ is a beneficial alternative to foreclosure when a homeowner needs to sell and can no longer afford to make their mortgage payments. The lender agrees to accept less than the amount owed to pay off a loan now rather than taking the property back by foreclosure and trying to sell it later. Lenders agree to a Consented Sale™ because they believe it will net them more money than going forward with a lengthy and costly foreclosure process.

A Consented Sale™ is an "enhanced" short sale and BK Global™ is able to obtain pre-consent by utilizing its proprietary BK Score™ system that analyzes and provides lenders an immediate evaluation of the value of the property and its probability for sale. In addition, BK Global™ is able to agree with lenders/servicers on a strike price for each property, and utilize its national www.bankruptcylistings.com marketplace for listings and online offer management platform.

BK Score™

BK Score™ is generated from a finite set of data points in a prescribed sequence to achieve a resulting score between the values of 1 and 100. The BK Score™ is shared with trustees, servicers, courts, and software management platforms and indicates the likelihood that an asset in a bankruptcy is qualified for consented disposition. The higher the BK Score™ there is a better chance to sell the property. In addition to the presented scores, BK Global provides the trustee a solution to sell the asset which maximizes the benefit to the estate. BK Global™ is at the forefront of creating new industry standards for trustee services.

To consistently measure and predict market value of real estate assets nationally, in an ever changing and fluid real estate market, it is important to have a well-defined methodology that explains how values are derived. The BK Score™ uses multiple data points to predict sales confidence compared to the limited local market inputs used by real estate brokers who are not certified in short sales. BK Score™ incorporates a number of unique methodology questions that include the data points listed below.

**Highlighted BK Score™ Data Points**

- Asset Value / Liabilities / Liens
- Judicial / Non-judicial State Analysis
- Pro Se (Professional Legal Representation)
- Title Search
- Statement of Intent by Debtor
- Foreclosure Timeline Analysis
- Redemption Period Analysis
- Community / Non-community Asset
- Asset Valuation Model (AVM)

## BK Score™ Core Benefits

**Increased Confidence of a Consented Short Sale** – BK Score™ gives lenders, servicers and real estate professionals more precise information on which to determine baseline sales values to achieve a successful consented short sale.

**Accelerates the Short Sale Decision Process** – Technology that utilizes scoring systems allows lenders/servicers to make instant valuation and sales consent decisions. This is notable as applications for consented sale of property can be approved by lenders/servicers in hours rather than weeks for sales values which score above a lender's score cutoff.

**Reduces Risk of Completing a Cooperative Short Sale** – There are certain barriers to a short sale. Servicers are frequently wary of short sale offers because of concerns that they are settling the debt at too low a price. Greater probability that servicers will consent to a short sale is made possible thanks to BK Score™. The BK Score™ empowers any lender/servicer to quickly set a cut off price and begin the short sale process, without time-consuming phone calls, faxed documents, or any effort from the agent or trustee.

**Increases Transaction Transparency** – BK Global™ is integrated with most major lender/servicers nationally. The BK Score™, which has revolutionized the default servicing industry, helps servicers select and execute optimal baseline valuations based on measurable guidelines while driving efficiency, fostering transparency and facilitating compliance. With the use of BK Score™ agents and trustees can quickly collaborate and determine an appropriate list price that allow agents to begin pursuing sales offers with confidence.

The BK Score™ algorithm has been developed by industry experts that have over 30 years of experience in Distressed Real Estate and Bankruptcy Sales. To date, over 2 years of bankruptcy assets have been analyzed and scored using the BK Global Scoring system. BK Score™ is a trademark pending registration with the US Trademark and Patent Office.

BK Search™

BK Search™, powered by the leading national investigation firm Interfor Inc., enables trustees in the BK Global™ program to perform nationwide searches on all potential assets in bankruptcy. Trustees will receive an extremely valuable initial report prior to their 341(a) meeting, which will allow them to question uncovered assets. Interfor is a US based international investigation and security consulting firm specializing in comprehensive intelligence services to the legal, corporate, financial communities and individuals. The company is staffed by highly skilled investigators and fraud examiners, many of whom have been associated with government, defense, and intelligence agencies worldwide, including the United States CID, CIA, DEA and FBI agencies. Interfor is fully licensed and operates in the United States, Europe, the Middle East, the Americas, Africa and Asia. The investigators are also supported by a sophisticated research division using state-of-the-art technology.



May 8, 2018

Christine Herendeen
Chapter 7 Trustee
P.O. Box 152348
Tampa, FL 33684
E-mail: clherendeen@herendeenlaw.com

Re:    John Wolding
       Agreement to Negotiate Real Estate Sale for 17954 Branch Rd, Hudson, FL 34667

Dear Trustee Herendeen:

This letter confirms the Agreement to Negotiate a Real Estate Sale for the referenced property ("Property") and confirms the undersigned's ("our," "we" or "us") agreement to negotiate a Real Estate Sale on the following terms and conditions (collectively, the "Agreement") with the provision that the hired professionals, BKRES or Local Agent, shall not participate in the sale and purchase of any estate property except as hired brokers:

      1.    Following your signature approving this Agreement, we and our affiliate, Bankruptcy Global Holdings, LLC, D/B/A Bk Global will make commercially reasonable efforts to procure the consent and agreement ("Consent") of the senior mortgagee ("Secured Creditor") to:

      a.    sell the Property under 11 U.S.C. § 363(b) to whichever third party you determine to have made the best qualified offer during a public sale approved by the court or agree to 11 U.S.C. § 363(k) and place a credit bid on the Property from the estate;

      b.    release its lien with respect to the Property; and

      c.    agree to a 11 U.S.C. § 506 surcharge to (x) pay our fee and expenses, any commission payable to the local real estate broker and all other fees and expenses associated with the sale, and (y) provide a carve-out for the benefit of allowed unsecured creditors of the estate.

      2.    We will select a local real estate broker to co-list the property. You will retain both BK Global and the local real estate broker to market the Property for sale to the public under a separate listing agreement. We will assist them by coordinating all aspects of the listing and sale process that involve Secured Creditor's Consent. We will also prepare and deliver any and all reports and information about the Consent, listing and sale process that you reasonably require. However, the local listing broker will be solely responsible for providing you with all other brokerage services associated with selling the Property, including inspecting it to confirm condition and occupancy, preparing any comparative market analysis and/or Broker's Price Opinion (BPO), recommending a listing price, preparing marketing materials, including photographs and sign-age, and displaying the same at the Property and on the Multiple Listing Service, conducting all open houses and showings, and helping you evaluate and negotiate purchase offers, all at their sole cost and expense.

1

**Christine Herendeen, Trustee**
**Agreement to Negotiate Consented Sale**
**17954 Branch Rd, Hudson, FL 34667**
**John Wolding**

3.      The term of this Agreement will commence when you sign and return a copy of this letter and the court approves it. This Agreement will automatically terminate upon the closing of the sale of the Property, or it may be terminated by either party for any or no reason after 180 days from commencement. In addition, this Agreement will be terminated if the Chapter 7 Trustee files a Report of No Distribution, files a Notice of Abandonment of the subject property, or submits a Trustee's Final Report to the Office of the United States Trustee.

4.      There will be no fees due to, or payable by, either party under this Agreement, and neither party will be reimbursed by the other party for any cost or expense. Subject to the foregoing, you acknowledge and agree that our fee and expenses will be paid by Secured Creditor as a 11 U.S.C. § 506 surcharge, if and to the extent that Secured Creditor agrees, and the court approves. You further acknowledge and agree that, if the Property is sold to a third party, we may receive some or all of our fee and expenses under a fee agreement with the local listing broker.

5.      You will make commercially reasonable efforts to assist us in procuring Secured Creditor's Consent and marketing and selling the Property and hereby appoint us as your agent to act on your behalf as trustee in connection with the same.

6.      We acknowledge and agree that (a) you are not executing this Agreement in your individual capacity, but solely as trustee of the estate, (b) we do not and will not have any right or claim with respect to the estate and (c) our sole recourse for payment of our fee and expenses will be to Secured Creditor under the Consent and the local listing broker under our fee agreement, but only if and to the extent that the same are approved by the court.

7.      This Agreement constitutes our complete agreement on this matter and supersedes all prior agreements and representations concerning the same. It may not be modified or amended except in a writing signed by both parties.

Please let us know if you have any questions regarding the foregoing or enclosed materials. Otherwise, kindly confirm your agreement by signing and returning this letter to retain us at your earliest convenience.

We look forward to working with you.

Sincerely,

**BK GLOBAL:**

**BK GLOBAL REAL ESTATE SERVICES**, a Florida limited liability company

By: _____

          Patrick Butler, Broker-in-Charge

Acknowledged and agreed as of the date set forth above.

**TRUSTEE:**

_____

**CHRISTINE HERENDEEN**, not individually but solely as Trustee in the referenced matter.

2

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

In re:                                          Case No. 18-01970
                                                Chapter 7
John Wolding,

_____Debtor._____/


**AFFIDAVIT OF SHAWN POOLE IN SUPPORT OF APPLICATION TO RETAIN BK
GLOBAL REAL ESTATE SERVICES AND SNAP REALTY TO PROCURE
CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. § 327, 328 AND 330**


STATE OF FLORIDA                    )
                                    )
COUNTY OF Pasco                     )


      Shawn Poole, being duly sworn, says:

    1.     I am a real estate agent duly licensed by the State of FLORIDA.

    2.     I am an agent of Snap Realty, office located at 7015 Bougenville Dr., Port Richey,

FL 34668 ("Listing Agent").

    3.     I am familiar with the Application to Retain Snap Realty, filed by the Trustee

("Application") and the property described therein.

    4.     I believe that I am experienced and qualified to represent the Trustee in connection

with the marketing and sale of the real property located at 17954 Branch Rd, Hudson, FL 34667

(the "Property").


    5.     Snap Realty has agreed to accept employment pursuant to the terms and conditions

set forth in the Application and the proposed commission structure.  Based upon my experience

EXHIBIT B

and knowledge of the real estate market, I believe that the commission structure, proposed to be paid, to Snap Realty does not exceed customary commissions in the applicable geographical area and are reasonable for the type of employment proposed.

6.      Neither I nor any member of Snap Realty hold or represent any interest adverse to the estate with respect to the matters for which we are to be employed and we are disinterested persons within the meaning of 11 U.S.C. § 101(14), as required by § 327(a).

7.      To the best of my information and belief, neither I nor the other members of this firm have any connection with the Debtor, its creditors, or any other party in interest or their respective attorneys or accountants, the U. S. Trustee, or any person employed in the office of the U.S. Trustee, as required by Rule 2014 of the Federal Rules of Bankruptcy procedure except as set forth below.

8.      I represent no interest adverse to the Debtor or its estate in the matters upon which I am to be engaged.

FURTHER AFFIANT SAYETH NAUGHT.

_____
SHAWN POOLE of
SNAP REALTY

The foregoing instrument was sworn to and subscribed before me this  18  day of May, 2018.

NOTARY PUBLIC

_____
Notary Public, State of FLORIDA
**Valerie Klesius**
_____
Type, Stamp, or Print Name as
Commissioned

VALERIE KLESIUS
Notary Public - State of Florida
Commission # FF 997625
My Comm. Expires Jul 31, 2020

### Bankruptcy (Broker) Addendum

This Addendum is made part of that Exclusive Right-To-Sell Listing Agreement referenced above (the "Listing Agreement"), for the sale of 17957 Brank Rd, Hudson, FL 34667 (the "Property"), in which Christine Herendeen, Trustee of the Bankruptcy Estate of John Allan Wolding, Bankr. Case No. 8:18-bk-01971-RCT, is also referred to as the "Seller" and Shawn B. Poole  with Snap Realty LLC referred to as the "Listing Broker."

1.      The Listing Broker hereby acknowledges that Christine Herendeen, Trustee, is a Bankruptcy Trustee, and as Trustee, Ms. Herendeen is not privy to facts concerning the condition of the property. The Listing Broker waives any disclosure from Christine Herendeen and understands that all land, improvements, and real and any permitted personal property will be sold, conveyed, and/or assigned, as applicable, by the Seller in an "As-Is" condition, and that the Seller hereby expressly disclaims any and all warranties, whether express or implied, with respect to the land, improvements, and real and personal property.

2.      The Listing Broker understands that Christine Herendeen, Trustee of the Bankruptcy Estate of John Allan Wolding, is the Transferor/Seller  in this matter in his capacity as Chapter 7 Bankruptcy Trustee, and not individually.

3.      The Listing Broker understands that the listing of this property and the subsequent sale is subject to Bankruptcy Court approval, and that the Listing Agreement shall not be binding upon the Seller unless and until it is approved by the Bankruptcy Court. Listing Broker further agrees that the Bankruptcy Court will permit other parties to submit bids for this property.

4.      Listing Period. Paragraph 1 of the Listing Agreement is modified to provide that the parties agree that this listing agreement may be terminated by the Seller at any time if Seller decides not to pursue sale of the Property.

5.      Compensation to Broker. Paragraph 8 and 11 of the Listing Agreement are modified to provide that Seller agrees to pay compensation only upon approval of sale by the Bankruptcy Court and closing of the sale. Listing Broker acknowledges that the Bankruptcy Court may determine part of the compensation to Listing Broker provided for in the listing agreement may be payable to a real estate broker representing the Buyer of the Property.

7.      Seller's Obligations: Disclosure of Material Facts. With respect to Paragraph 7(f) of the Listing Agreement, Seller does not intend to make a written disclosure statement, as Seller has no information regarding the condition of the Property. Listing Broker may seek, to the extent possible, for or from the Buyer, a written disclosure statement from the Debtor, waiver of a written disclosure statement by the Buyer and/or a written disclosure statement from an expert or professional.

8.      Costs.    Paragraph 11of the Listing Agreement is modified to provide that Seller will pay costs agreed to by Seller, subject however to Bankruptcy Court approval, if required.

9.      Mediation and Arbitration. Delete Paragraph 12 of the Listing Agreement. The Bankruptcy Court for the Middle District of Florida shall have exclusive jurisdiction over all disputes or claims relating to the sale of this property.

10.      Indemnification. Delete Paragraph 7(d) of the Listing Agreement.

11.      Miscellaneous: Paragraph 13 of the Listing Agreement.  The Broker may not assign this agreement to another listing office.

DATED: Tampa, FL __5/23/18__

Christine Herendeen, Trustee

Shawn Poole                          05/23/2018
SHAWN B. POOLE

Shawn Poole
SNAP REALTY LLC

Authentisign ID: 0220B789-FD10-4FA0-B84C-E8236BF6C9F3

## Exclusive Right of Sale Listing Agreement

 FloridaRealtors®

1   This Exclusive Right of Sale Listing Agreement ("Agreement") is between

2*  _____ Christine Herendeen, BK Trustee for the estate of John Wolding _____ ("Seller")

3*  and _____ SNAP REALTY LLC _____ ("Broker").

4   **1. Authority to Sell Property: Seller** gives **Broker** the EXCLUSIVE RIGHT TO SELL the real and personal
5   property (collectively "Property") described below, at the price and terms described below, beginning
6*  _____ 5/18/2018 _____ and terminating at 11:59 p.m. on _____ 11/30/2018 _____ ("Termination Date"). Upon
7   full execution of a contract for sale and purchase of the Property, all rights and obligations of this Agreement will
8   automatically extend through the date of the actual closing of the sales contract. **Seller** and **Broker** acknowledge
9   that this Agreement does not guarantee a sale. This Property will be offered to any person without regard to race,
10  color, religion, sex, handicap, familial status, national origin, or any other factor protected by federal, state, or local
11  law. **Seller** certifies and represents that she/he/it is legally entitled to convey the Property and all improvements.

12  **2. Description of Property:**
13*     (a) **Street Address:** _17954   Branch Rd_
14                                                    Hudson                                    FL  34667-5813
15*     Legal Description: HIGHLANDS UNREC PLAT TRACT 357 DECS AS: COM AT SW COR OF SE1/4 OF SEC TH N88DEG54'06"E ALG S LINE OF
16*     SE1/4 1321.57 FT TH N00DEG00'06"E 4541.06 FT FOR POB TH N00DEG00'06"E 314.79 FT TH N53DEG32'46"W 94 ☐ See Attachment _____

17*     (b) **Personal Property, including appliances:** _fridge, range, microwave, dishwasher_
18*     _____ ☐ See Attachment _____

19      (c) **Occupancy:**
20*     Property ☒ is ☐ is not currently occupied by a tenant. If occupied, the lease term expires _____.

21  **3. Price and Terms:** The property is offered for sale on the following terms or on other terms acceptable to **Seller**:
22*     (a) **Price:** $_____ 214,900.00 _____
23*     (b) **Financing Terms:** ☒ Cash ☒ Conventional ☐ VA ☐ FHA ☐ Other (specify) _____
24*         ☐ **Seller** Financing: **Seller** will hold a purchase money mortgage in the amount of $_____
25*         with the following terms: _____
26*         ☐ Assumption of Existing Mortgage: Buyer may assume existing mortgage for $_____ plus
27*         an assumption fee of $_____. The mortgage is for a term of _____ years beginning in
28*         _____, at an interest rate of _____% ☐ fixed ☐ variable (describe) _____.
29*         Lender approval of assumption ☐ is required ☐ is not required ☐ unknown. **Notice to Seller: (1)** You may
30          remain liable for an assumed mortgage for a number of years after the Property is sold. Check with your
31          lender to determine the extent of your liability. **Seller** will ensure that all mortgage payments and required
32          escrow deposits are current at the time of closing and will convey the escrow deposit to the buyer at closing.
33          **(2)** Extensive regulations affect **Seller** financed transactions. It is beyond the scope of a real estate licensee's
34          authority to determine whether the terms of your **Seller** financing agreement comply with all applicable laws or
35          whether you must be registered and/or licensed as a loan originator before offering **Seller** financing. You are
36          advised to consult with a legal or mortgage professional to make this determination.
37*     (c) **Seller Expenses: Seller** will pay mortgage discount or other closing costs not to exceed _____% of the
38          purchase price and any other expenses **Seller** agrees to pay in connection with a transaction.

39  **4. Broker Obligations: Broker** agrees to make diligent and continued efforts to sell the Property until a sales
40      contract is pending on the Property.

41  **5. Multiple Listing Service:** Placing the Property in a multiple listing service (the "MLS") is beneficial to **Seller**
42      because the Property will be exposed to a large number of potential buyers. As a MLS participant, **Broker** is
43      obligated to timely deliver this listing to the MLS. This listing will be promptly published in the MLS unless **Seller**
44      directs **Broker** otherwise in writing. **Seller** authorizes **Broker** to report to the MLS this listing information and price,
45      terms, and financing information on any resulting sale for use by authorized Board / Association members and
46      MLS participants and subscribers unless **Seller** directs **Broker** otherwise in writing.

Seller (____/____) and Broker/Sales Associate (____) (SBP) acknowledge receipt of a copy of this page, which is Page 1 of 4.
ERS-17tb Rev 6/17                                                                © 2017 Florida Realtors®

This software is licensed to [Shawn Poole - SNAP REALTY LLC] www.transactiondesk.com.    InstanetFORMS

Authentisign ID: 0220B789-FD10-4FA0-B84C-E8236BF6C9F3

47  **6. Broker Authority: Seller** authorizes **Broker** to:
48      **(a)** Advertise the Property as **Broker** deems advisable including advertising the Property on the Internet unless
49      limited in (6)(a)(i) or (6)(a)(ii) below.
50      (**Seller opt-out**) (**Check one if applicable**)
51*     **(i)** ☐ Display the Property on the Internet except the street address.
52*     **(ii)** ☐ **Seller** does not authorize **Broker** to display the Property on the Internet.
53      **Seller** understands and acknowledges that if **Seller** selects option (ii), consumers who search for listings
54      on the Internet will not see information about the Property in response to their search.
55*     _____/_____ **Initials of Seller**
56      **(b)** Place appropriate transaction signs on the Property, including "For Sale" signs and "Sold" signs (once **Seller**
57      signs a sales contract) and use **Seller's** name in connection with marketing or advertising the Property.
58      **(c)** Obtain information relating to the present mortgage(s) on the Property.
59      **(d)** Provide objective comparative market analysis information to potential buyers.
60*     **(e)** (**Check if applicable**) ☐ Use a lock box system to show and access the Property. A lock box does not
61      ensure the Property's security. **Seller** is advised to secure or remove valuables. **Seller** agrees that the lock
62      box is for **Seller's** benefit and releases **Broker**, persons working through **Broker**, and **Broker's** local Realtor
63      Board / Association from all liability and responsibility in connection with any damage or loss that occurs.
64*     ☐ Withhold verbal offers. ☐ Withhold all offers once **Seller** accepts a sales contract for the Property.
65      **(f)** Act as a transaction broker.
66      **(g) Virtual Office Websites:** Some real estate brokerages offer real estate brokerage services online. These
67      websites are referred to as Virtual Office Websites ("VOWs"). An automated estimate of market value or
68      reviews and comments about a property may be displayed in conjunction with a property on some VOWs.
69      Anyone who registers on a VOW may gain access to such automated valuations or comments and reviews
70      about any property displayed on a VOW. Unless limited below, a VOW may display automated valuations or
71      comments and reviews about this Property.
72*     ☐ **Seller** does not authorize an automated estimate of the market value of the listing (or a hyperlink to such
73      estimate) to be displayed in immediate conjunction with the listing of this Property.
74*     ☐ **Seller** does not authorize third parties to write comments or reviews about the listing of the Property (or
75      display a hyperlink to such comments or reviews) in immediate conjunction with the listing of this Property.
76  **7. Seller Obligations:** In consideration of **Broker's** obligations, **Seller** agrees to:
77      **(a)** Cooperate with **Broker** in carrying out the purpose of this Agreement, including referring immediately to
78      **Broker** all inquiries regarding the Property's transfer, whether by purchase or any other means of transfer.
79      **(b)** Provide **Broker** with keys to the Property and make the Property available for **Broker** to show during
80      reasonable times.
81      **(c)** Inform **Broker** before leasing, mortgaging, or otherwise encumbering the Property.
82      **(d)** Indemnify **Broker** and hold **Broker** harmless from losses, damages, costs, and expenses of any nature,
83      including attorney's fees, and from liability to any person, that **Broker** incurs because of (1) **Seller's**
84      negligence, representations, misrepresentations, actions, or inactions; (2) the use of a lock box; (3) the
85      existence of undisclosed material facts about the Property; or (4) a court or arbitration decision that a broker
86      who was not compensated in connection with a transaction is entitled to compensation from **Broker**. This
87      clause will survive **Broker's** performance and the transfer of title.
88      **(e)** Perform any act reasonably necessary to comply with FIRPTA (Section 1445 of the Internal Revenue Code).
89      **(f)** Make all legally required disclosures, including all facts that materially affect the Property's value and are not
90      readily observable or known by the buyer. **Seller** certifies and represents that **Seller** knows of no such
91      material facts (local government building code violations, unobservable defects, etc.) other than the following:
92* _____
93      **Seller** will immediately inform **Broker** of any material facts that arise after signing this Agreement.
94      **(g)** Consult appropriate professionals for related legal, tax, property condition, environmental, foreign reporting
95      requirements, and other specialized advice.
96  **8. Compensation: Seller** will compensate **Broker** as specified below for procuring a buyer who is ready, willing,
97      and able to purchase the Property or any interest in the Property on the terms of this Agreement or on any other
98      terms acceptable to **Seller**. **Seller** will pay **Broker** as follows (plus applicable sales tax):
99*     **(a)** \_\_\_\_6\_\_\_\_% of the total purchase price plus $_____ OR $_____, no
100     later than the date of closing specified in the sales contract. However, closing is not a prerequisite for **Broker's**
101     fee being earned.
102*     **(b)** \_\_\_\_6\_\_\_\_ ($ or %) of the consideration paid for an option, at the time an option is created. If the option is
103     exercised, **Seller** will pay **Broker** the Paragraph 8(a) fee, less the amount **Broker** received under this
104     subparagraph.

Seller (\_\_\_\_\_) and Broker/Sales Associate (\_\_\_\_\_) ( SP ) acknowledge receipt of a copy of this page, which is Page 2 of 4.
ERS-17tb Rev 6/17

© 2017 Florida Realtors®

Authentisign ID: 0220B789-FD10-4FA0-B84C-E8236BF6C9F3

105*     **(c)** \_\_\_\_\_6\_\_\_\_\_ (\$ or %) of gross lease value as a leasing fee, on the date **Seller** enters into a lease or
106     agreement to lease, whichever is earlier. This fee is not due if the Property is or becomes the subject of a
107     contract granting an exclusive right to lease the Property.

108     **(d) Broker's** fee is due in the following circumstances: (1) If any interest in the Property is transferred, whether by
109     sale, lease, exchange, governmental action, bankruptcy, or any other means of transfer, regardless of whether
110     the buyer is secured by **Seller**, **Broker**, or any other person. (2) If **Seller** refuses or fails to sign an offer at the
111     price and terms stated in this Agreement, defaults on an executed sales contract, or agrees with a buyer to
112*     cancel an executed sales contract. (3) If, within _____ days after Termination Date ("Protection Period"),
113     **Seller** transfers or contracts to transfer the Property or any interest in the Property to any prospects with whom
114     **Seller**, **Broker**, or any real estate licensee communicated regarding the Property before Termination Date.
115     However, no fee will be due **Broker** if the Property is relisted after Termination Date and sold through another
116     broker.

117*     **(e) Retained Deposits:** As consideration for **Broker's** services, **Broker** is entitled to receive _____% (50% if
118     left blank) of all deposits that **Seller** retains as liquidated damages for a buyer's default in a transaction, not to
119     exceed the Paragraph 8(a) fee.

120   **9.**   **Cooperation with and Compensation to Other Brokers: Notice to Seller:** The buyer's broker, even if
121     compensated by **Seller** or **Broker**, may represent the interests of the buyer. **Broker's** office policy is to cooperate
122     with all other brokers except when not in **Seller's** best interest and to offer compensation in the amount of
123*     ☒ \_\_2\_\_% of the purchase price or \$_____ to a single agent for the buyer; ☒ \_\_2\_\_% of the
124*     purchase price or \$_____ to a transaction broker for the buyer; and ☒ \_\_2\_\_% of the purchase
125*     price or \$_____ to a broker who has no brokerage relationship with the buyer.
126*     ☐ None of the above. (If this is checked, the Property cannot be placed in the MLS.)

127   **10.**  **Brokerage Relationship: Broker** will act as a transaction broker. **Broker** will deal honestly and fairly; will account
128     for all funds; will use skill, care, and diligence in the transaction; will disclose all known facts that materially affect
129     the value of the residential property which are not readily observable to the buyer; will present all offers and
130     counteroffers in a timely manner unless directed otherwise in writing; and will have limited confidentiality with
131     **Seller** unless waived in writing.

132   **11.**  **Conditional Termination:** At **Seller's** request, **Broker** may agree to conditionally terminate this Agreement. If
133     **Broker** agrees to conditional termination, **Seller** must sign a withdrawal agreement, reimburse **Broker** for all direct
134*     expenses incurred in marketing the Property, and pay a cancellation fee of \$_____ plus
135     applicable sales tax. **Broker** may void the conditional termination, and **Seller** will pay the fee stated in Paragraph
136     8(a) less the cancellation fee if **Seller** transfers or contracts to transfer the Property or any interest in the Property
137     during the time period from the date of conditional termination to Termination Date and Protection Period, if
138     applicable.

139   **12.**  **Dispute Resolution:** This Agreement will be construed under Florida law. All controversies, claims, and other
140     matters in question between the parties arising out of or relating to this Agreement or the breach thereof will be
141     settled by first attempting mediation under the rules of the American Mediation Association or other mediator
142     agreed upon by the parties. If litigation arises out of this Agreement, the prevailing party will be entitled to recover
143     reasonable attorney's fees and costs, unless the parties agree that disputes will be settled by arbitration as follows:
144*     **Arbitration:** By initialing in the space provided, **Seller** (\_\_\_\_) (\_\_\_\_), Sales Associate (\_\_\_\_), and **Broker** ( *SBP* )
145     agree that disputes not resolved by mediation will be settled by neutral binding arbitration in the county in which
146     the Property is located in accordance with the rules of the American Arbitration Association or other arbitrator
147     agreed upon by the parties. Each party to any arbitration (or litigation to enforce the arbitration provision of this
148     Agreement or an arbitration award) will pay its own fees, costs, and expenses, including attorney's fees, and will
149     equally split the arbitrator's fees and administrative fees of arbitration.

150   **13.**  **Miscellaneous:** This Agreement is binding on **Seller's** and **Broker's** heirs, personal representatives,
151     administrators, successors, and assigns. **Broker** may assign this Agreement to another listing office. This
152     Agreement is the entire agreement between **Seller** and **Broker**. No prior or present agreements or representations
153     will be binding on **Seller** or **Broker** unless included in this Agreement. Electronic signatures are acceptable and
154     will be binding. Signatures, initials, and modifications communicated by facsimile will be considered as originals.
155     The term "buyer" as used in this Agreement includes buyers, tenants, exchangors, optionees, and other categories
156     of potential or actual transferees.

Seller (\_\_\_\_) (\_\_\_\_) and Broker/Sales Associate (\_\_\_\_) ( *SBP* ) acknowledge receipt of a copy of this page, which is Page 3 of 4.

© 2017 Florida Realtors®

This software is licensed to [Shawn Poole - SNAP REALTY LLC] www.transactiondesk.com.   InstanetFORMS

Authentisign ID: 0220B789-FD10-4FA0-B84C-E8236BF6C9F3

157* **14. Additional Terms:**
158    This Listing Agreement and any sale of the property is subject to and
       conditioned upon approval by the United States Bankruptcy Court.
159    Bankruptcy (Broker) Addendum
160
161
162
163
164
165
166
167
168
169
170*  **Seller's Signature:** _____ as Trustee and only as Trustee   Date: 5/21/18
      Christine Herendeen, BK Trustee for the estate of John Wolding, Case No. 8:18-01970-RCT
171*  Home Telephone: _____ Work Telephone: _____ Facsimile: _____
172*  Address: _____
173*  Email Address: _____
174*  **Seller's Signature:** _____ Date: _____
175*  Home Telephone: _____ Work Telephone: _____ Facsimile: _____
176*  Address: _____
177*  Email Address: _____
178*  **Authorized Sales Associate or Broker:** _Shawn B Poole_ Date: 05/21/2018
179*  Brokerage Firm Name: _SNAP REALTY LLC_ Telephone: 727-457-5453
180*  Address: 7015 Bougenville Dr                    Port Richey        FL        34668

181*  | Copy returned to **Seller** on _____ by ☐ email ☐ facsimile ☐ mail ☐ personal delivery. |

Florida REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as REALTOR®. REALTOR® is a registered collective membership mark which may be used only be real estate licensees who are members of the NATIONAL ASSOICATION OF REALTORS® and who subscribe to its Code of Ethics. The copyright laws of United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

Seller (____) (____) and Broker/Sales Associate (____) (_SBP_) acknowledge receipt of a copy of this page, which is Page 4 of 4.
ERS-17tb Rev 6/17                                                   © 2017 Florida Realtors®

This software is licensed to [Shawn Poole - SNAP REALTY LLC] www.transactiondesk.com.    InstanetFORMS